*90 N. J. Eq.*                Wills *v.* LeMunyon.

JOHN WILLS et al.

*v.*

JAMES LEMUNYON et al.

[Submitted April 22d, 1919.   Determined April 25th, 1919.]

1. Under the Descent act of New Jersey, as amended by *P. L. 1915 p. 61*, the word "ancestor" means anyone from whom an estate is inherited.

2. Where a person inherited a tract of land, one-half from his father and one-half from his brother, and died intestate, both his maternal and paternal uncles share in the one-half part inherited from the intestate's brother—the paternal uncles only in the part inherited from his father.

3. *Den* v. *Searing, 8 N. J. Law 340*, followed.

On final hearing on bill to quiet title.

*Mr. V. Claude Palmer,* for the complainants.

*Mr. George M. Hillman,* for the defendants.

LEAMING, V. C.

The bill herein is filed under the provisions of our statute authorizing bills to quiet title to real estate. *4 Comp. Stat. p. 5399.* The answer admits peaceable possession on the part of complainants and specifically sets forth the estate claimed by defendants.

The issue of title is dependent upon the construction to be given to our Descent act as it existed during the period the amendments of March 3d, 1915 (*P. L. 1915 p. 61*) were in force; but the specific issue here involved is not materially affected by those amendments.

The language of the act giving rise to this controversy is that contained in the sixth section:

23

"Unless where such inheritance came to the said person so seized by descent, devise or gift of some one, of his or her ancestors, in which case all those who are not of the blood of such ancestor shall be excluded from such inheritance."

This language is the same as that in the same section prior to the 1915 amendment (*2 Comp. Stat. p. 1920*), and the same as since its subsequent amendment by the act of March 29th, 1917. *P. L. 1917 p. 845*.

The admitted facts are: James Wills died intestate May 25th, 1916, leaving a widow, Mary Elizabeth Wills, and two sons, Alfred and James J. A tract of land owned by James Wills at his death admittedly then descended to his two sons, subject to the dower of his widow, who was the mother of Alfred and James J. Wills.

Alfred died August 11th, 1916, intestate, unmarried and without issue. At his death his undivided one-half interest in the land admittedly descended to his brother James J. This constituted James J. owner of the entire tract of land, subject to his mother's dower estate; but it will be noted that an undivided one-half of the tract came to James J. by immediate descent from his father, whereas the remaining undivided one-half came to him by immediate descent from his brother, who had previously inherited it from his father.

James J. died January 15th, 1917, intestate, unmarried and without issue. It is admitted that the widow—mother of James J. and Alfred—who was then alive, could not take. This is because the whole inheritance of James J. came to him "from the part of his father by descent." Section 4 of the act provides that in such case the title shall descend as if such person so seized had survived his mother. This language "from the part of his or her father by descent" has been determined to mean from the line of his or her father (*Banta* v. *Demarest, 24 N. J. Law 431*), hence all parties here in interest formally admit that the mother could not take and that the fee, at the death of James J., passed in accordance with the provisions of section 6 of the act, subject to the mother's dower. She has since died.

The present controversy is between complainants, who are two brothers and a sister of James Wills, from whom the inheritance originally came, and defendants, who are the brothers and sister of the widow of James Wills—mother of Alfred and James J. It is admitted by defendants that the undivided one-half of the tract which descended to James J. immediately from his father has become vested in complainants, as brothers and sister of James; but it is claimed by defendants that the other undivided one-half which James J. inherited immediately from his brother Alfred is shared equally by the brothers and sister of James and the brothers and sister of Mary Elizabeth, the widow of James, by reason of the provisions of section 6 .of the act.

The first part of section 6 of the act specifically provides as contended by defendants; but those provisions are followed by these qualifying words: .

"Unless where such inheritance came to the said person so seized by descent, devise or gift of some one of his or her ancestors, in which case all those who are not of the blood of such ancestor shall be excluded from such inheritance."

If this quoted language, like the qualifying language of section 4 of the act, is to be construed as meaning from the line of the father of James J., then the brothers and sister of the mother of James J. take nothing; but if construed to contemplate only the person from whom the descent immediately came, then the brothers and sister of the mother of James J. share, since they are clearly of the blood of Alfred, from whom the controverted one-half interest immediately came.

If this inquiry were wholly divorced from the appropriate influence of prior adjudications, I should incline to the view that similar import should be given to the qualifying language of sections 4 and 6. But in *Den* v. *Searing, 8 N. J. Law 340*, our supreme court construed the identical language here under consideration to mean the immediate ancestor and not one more remote from whom the descent may have come through the person last seized. In that case the court was giving considera-

tion to the fifth section of the act which relates to the rights of half-bloods; but the language there construed was the identical language here involved. In the opinion written by the chief-justice it is there said: "The words 'such ancestor' used in the proviso, clearly mean and are exclusively confined to the ancestor from whom the lands came immediately to the person dying seized, and do not embrace other or more remote ancestors, although the lands may have passed from or through such ancestors to the immediate ancestor."

In tracing back our descent legislation it will be found that the language here under consideration was first used in the act of February 15th, 1816. *P. L. 1816 p. 26.* That act repealed the third section of the act of May 24th, 1780 (*Pat. L. p. 43*) —our first Descent act—which section so repealed related to rights of half-bloods, and substituted in place of the repealed section rights of half-bloods as they are now defined in section 5 of our present act. In the act of 1816 the qualifying language in favor of the blood of the ancestor is identical with that now found in both the fifth and sixth sections of our present act. The provisions of the sixth section were first adopted in the act of January 29th, 1817. *Rev. L. 608.* It accordingly seems impossible to give to the language of section 6 a construction different from the same language first used in section 5; that as already stated has been held by our supreme court as contemplating the immediate ancestor.

It is urged in behalf of complainants that the word "ancestor" should not be understood to embrace a brother. The popular meaning of ancestor may be said to be one from whom a person lineally descended; but in its technical sense, as used in statutes of descent, the term ordinarily means any one from whom an estate is inherited. The array of authorities collected in *2 C. J. 1334* appear to be reasonably conclusive to that effect. See also *2 Am. & Eng. Encycl. L. (2d ed.) 319; 14 Cyc. 28-47.*

In *Cook v. Mount, 37 N. J. L. J. 4,* Judge Dungan, in a carefully prepared opinion, construed section 6 of our statute and determined that the language here in question refers to the person from whom the one last seized derived title, and not to

*90 N. J. Eq.*          McAllister *v.* Atlantic City.

an ancestor more remote from whom the immediate ancestor derived title by devise.

In view of the authorities referred to I am constrained to hold that the maternal uncles of James J. Wills share with his paternal uncles in the undivided one-half of the land inherited by James J. Wills from his brother Alfred Wills.